Barrett v. Barrett.

ALERNA BARRETT,

v.

MATTHEW BARRETT.

1. A husband, who was living with his wife in New York, deserted her there in 1864, and never thereafter contributed anything to the support of her or their children until about 1876, when the wife discovered that he was then living in Paterson, in this state, and removed there with her children. The husband then supported his wife and family, although not living with them, until March, 1877, when he stopped, and complaint was made against him before the civil authorities, and an order requiring him to pay a weekly sum for his family's support was obtained. In January, 1880, another similar order was obtained.—*Held,* that evidence by defendant's counsel that in 1877 *he* got defendant to consent to offer to take a house and live with his wife, and that defendant instructed him to inform her so, which he did, is not sufficient, in view of the facts of the case, to prevent a divorce for desertion.

2. Where the evidence shows that both parties have resided in this state for the time requisite to confer jurisdiction, and that they also resided here when the petition was filed, the petition may be amended so as to state these facts, if omitted.

On petition for divorce. On final hearing on pleadings and proofs.

*Mr. J. F. Cahill*, for petitioner.

*Mr. H. S. Drury*, for defendant.

THE CHANCELLOR.

The petitioner sues for divorce from the bond of marriage on the ground of desertion. The parties were married in New York in 1844. They appear to have lived together in that city up to May, 1864, when the defendant left the petitioner, and he has lived apart from her ever since. Through proceedings taken in New York by the authorities there, he or his surety was compelled to contribute to the support of his wife and family for a few months after he left them. From that time he did nothing for them until his wife, eleven or twelve years afterwards, having discovered that he was living in Paterson, removed with her children to that city. From that time he appears to have supported them (but living separate from them), up to about March, 1877, when he refused to do so any longer, and complaint was made against him for non-support before the recorder of the city by the superintendent of out-door relief of the city, and he was required to pay $6 a week for the support of his wife and family. It appears that another order was made by the recorder on like complaint in January, 1880. In September of that year an order for alimony was made against him in this suit. That the defendant in May, 1864, deserted his wife, and that he has ever since lived apart from her, there is no room to doubt. He admits those facts. When he left her she had six children to support, and another was born eight months afterwards. After he left her he never communicated with her or his family, nor contributed anything to her or their support until she went to him in Paterson; but he concealed his whereabouts from them, and they were all ignorant where he was until shortly before they came to Paterson. From that time he has not only lived apart from his wife, but has refused to live with her or to take her to board with him at his sister's, in Paterson, where he lived. From March, 1877, he has contributed nothing to her support except through the coercion of legal proceedings. He indeed

says that at one time, through his counsel, he offered to take a house in Paterson and live with her there, but she refused. She, however, on the other hand, denies that she ever refused to live with him. It appears that this offer was made when the first complaint for non-support was made to the recorder against him, which was March 21st, 1877. He himself says so. He says it was a few months after she came to Paterson. Mr. Springsteen, the superintendent of out-door relief, who made the complaint, was present, and says it was in 1877. The defendant's counsel says he "got" the defendant "to consent" to take a house and live with his wife, and the defendant instructed him to inform her so. The defendant made no proposition himself. He says in his testimony before the master, on the application for alimony, that he did not ask her to come and live with him, and he adds: "I don't know how she could refuse if she was not asked." It is evident from the language of his counsel on the subject (that he "got him to consent") that the defendant was reluctant to permit his counsel to make the proposition, and it is manifest, from his own testimony, that he would not make it himself. It may well be supposed that under the circumstances the petitioner was distrustful of the sincerity of a proposition not made by the defendant but by his counsel, and when the defendant was before the recorder to answer a complaint of non-support. It is quite obvious that such an offer, made under such circumstances, is not enough, in view of the facts, to relieve the defendant from the charge now made against him, or deprive the petitioner of her claim to a divorce on the ground of willful, continued and obstinate desertion. It is too clear for remark that he was unwilling to live with her. He excuses himself for not having made the proposition referred to himself, instead of through his counsel, on the ground of his unwillingness to talk to her. He does not profess to have made any offer to live with her, or any request to her to live with him in any way, whether through counsel or friends, or children, or otherwise, since that meeting before the recorder in the spring of 1877. On the contrary there is evidence from his children of his refusal to live with her or to permit her to live with him. He claims that he

was compelled to desert her in 1864 by reason of her unreasonable conduct and cruelty towards him. There is, however, great reason to believe, from the evidence, that his statements on this score are at least exaggerated. He did not, so far as it appears, give it as an excuse for leaving her, or make any reference to it in the course of the proceedings against him before this suit was brought, not even when, through his counsel, he made the proposition to her to take a house and live with her therein, and he does not set it up in his answer. He is proved to have deserted his wife in 1864, and to have continued the desertion to this time, and it is evident that the desertion has been willful, continued and obstinate. There should be a decree of divorce accordingly. He is the owner of a business, a liquor store, in Paterson, and has money in investments outside of his business. He should be required to pay proper alimony and give reasonable security therefor. He must pay a reasonable counsel fee in addition to the costs of this suit.

It was urged on the part of the defendant, on the hearing, that the petitioner makes no allegation on the subject of the residence of the parties during the three years next preceding the beginning of the suit. The proof shows that both parties resided in this state during that period, and also that in fact they both resided here when the petition was filed. The petition may be amended in this respect.